UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT COLEMAN,<br><br>      Plaintiff,<br><br>vs.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS and REHABILITATION, *et al.*,<br><br>      Defendants. | Case No. 1:11-cv-01587-RRB<br><br><u>**DISMISSAL ORDER**</u> |

Robert Coleman, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action under the Civil Rights Act (42 U.S.C. § 1983), the American with Disabilities Act (42 U.S.C. § 12101, *et seq.*), and § 504 of the Rehabilitation Act (29 U.S.C. § 794) against the California Department of Corrections and Rehabilitation ("CDCR") and three of its officials.[1] Coleman's Complaint arises out of his incarceration in the Special Housing Unit ("SHU") at California State Prison–Corcoran ("COR"). Coleman is currently incarcerated at the California State Prison–Sacramento ("CSP-Sac").

---

[1] In addition to the California Department of Corrections and Rehabilitation, Coleman names as defendants: Susan L. Hubbard (Director of CDCR); Scott Kernan (Chief Deputy Secretary of Adult Operations, CDCR); and Robin Dezembr (Director, Division of Correctional Health Care Services).

I.      GRAVAMEN OF COMPLAINT

Coleman has been clinically diagnosed with a mental disorder: "Exhibitionism." In his Complaint Coleman alleges that by confining him in administrative segregation ("ad-seg") in a SHU Defendants have: (1) denied him equal protection; (2) been deliberately indifferent to his medical needs; (3) violated § 504 of the Rehabilitation Act; and (4) violated Title II of the ADA.

Coleman's Complaint appears to challenge the CDCR housing policy initiated by Defendants Scott Kernan and Robin Dezembr placed into effect on August 31, 2007. As pertinent to the complaint that policy provides:

> **AMENDED HOUSING POLICY FOR ADULT MALE INMATES REFERRED FOR TREATMENT OF EXHIBITIONISM**
> This supersedes the memorandum issued July 2, 2007, that announced the housing policy for adult male inmates diagnosed with exhibitionism.
> Pursuant to a *Coleman* court order issued March 9, 2007, the California Department of Corrections and Rehabilitation (CDCR) is required to implement a specialized group Exhibitionism Treatment Program for inmates in the Mental Health Services Delivery System (MHSDS) who have been identified as requiring treatment for exhibitionism. The *Coleman* order required that group treatment be provided in at least three institutions by July 1, 2007. A mental heath interdisciplinary team (IDTT) will provide a form 128:MH8 Chrono, Mental Health IDTT Housing/Program Recommendation (sample attached), documenting that the inmate meets clinical criteria requiring treatment of exhibitionism. A CDCR Form 128-C, Medical, Psych, Dental Chrono may be used temporarily while institutions are in the process of implementing form 128-MH8. Treatment is required when an inmate has had at least one episode of indecent exposure in the last six months (at the time of the IDTT), and is either diagnosed with Exhibitionism, or meets the following alternate criteria.
> Alternate criteria: The Exhibitionism diagnosis requires that the patient experiences "fantasies, sexual urges, or behaviors involving the exposure of one's genitals to an unsuspecting stranger." An inmate who meets all criteria for the diagnosis of Exhibitionism, except that the victim was not an "unsuspecting stranger" but was a staff member or inmate who did not consent

to or encourage the behavior, must be referred for treatment of exhibitionism. A diagnosis of Exhibitionism is not required for inmates who meet the alternate criteria.

Inmate-patients meeting the clinical criteria shall be transferred to one of the three locations, based on the following custody criteria.

**Pelican Bay State Prison (PBSP)-Psychiatric Services Unit (PSU)**
**California State Prison, Sacramento (SAC) - PSU**
- Inmates currently serving Security Housing Unit (SHU) terms and who are at the Enhanced Outpatient Program (EOP) level of care.
- Inmates on Administrative Segregation Unit (ASU) status with pending SHU terms at their current location and who are at the EOP level of care.

**California State Prison, Corcoran (COR) SHU**
- Inmates currently serving SHU terms and who are at the Correctional Clinical Case Management System(CCCMS) level of care.
- Inmates on ASU status pending SHU terms at their current location and who are at the CCCMS level of care.

Inmates that are eligible for COR SHU who are susceptible to developing Coccidiomycosis (Valley Fever) organism will-go-to SAC PSU.

\* \* \* \*

**HOUSING POLICY**

Once clinically diagnosed with Exhibitionism or determined to meet the alternate criteria, the case will be reviewed by an Institutional Classification Committee and Interdisciplinary Treatment Team (ICC/IDTT). The ICC/IOTT will evaluate the inmate's case factors to determine whether he can safely program in a group therapy setting in one of the three programs listed above.  In addition to the required documentation outlined in the California Code of Regulations, Title 15, Section 3375, "Classification Process", the CDCR Form 128-G, Classification Chrono, shall document the following:

- The date of placement and initial reason for placement in segregated housing.
- Whether a Rules Violation Report (RVR) was issued and, if so, its disposition.  Identify the outcome if adjudicated.  Note whether the case was  referred to the District Attorney (DA) and, if so, the status of the referral.
- Any subsequent RVRs the inmate has received and their status (adjudicated, pending DA referral, etc).
- Whether the inmate has a pending RVR and, if so, annotate that the sending institution will retain responsibility for the adjudication of all pending RVRs.

DISMISSAL ORDER
*Coleman v. CDCR*, 1:11-cv-01587-RRB – 3

- Whether the inmate is currently serving a SHU term and, if so, whether it is determinate or indeterminate, and the Minimum Eligible Release Date (MERD), if applicable.
- If the inmate is pending a SHU term. document the projected MERD date.
- Review of potential enemy concerns.
- Any security concerns the committee may have as a result of the inmate's case factors.
- If suitable for placement, indicate the specific exhibitionism treatment program the inmate is being recommended for transfer.
- If not suitable for placement, provide specific reasons why the inmate is not eligible.

Inmates with pending RVRs and/or court proceedings may be transferred to the program. After the inmate is transferred, the sending institution will retain responsibility for the adjudication ·of all pending RVRs and be responsible for transporting the inmate to and from all necessary court proceedings. The sending institution will be responsible for notifying the receiving institution when the inmate must be transported for court proceedings.

Inmates whose SHU terms are within 90 days of expiring and who have no subsequent disciplinary related issues pending will **not** be transferred to the treatment program. Inmates whose SHU terms will not expire within 90 days or have additional SHU terms pending are eligible for transfer.

Inmates that are in ASU with pending or projected SHU terms of greater than 90 days are eligible for transfer. Inmates with projected MERDs of less than 90 days will not be transferred to the program.

Therefore, any inmate with a SHU or projected SHU term of less than 90 days is not eligible for placement in the Exhibitionism Treatment Program.

Inmates previously housed on Sensitive Needs Yards (SNY) who are currently placed in ASU or are serving SHU terms will be reviewed on a case-by-case basis by the current institution's ICC/IDTT for placement consideration to determine whether the individual can safely participate in a group treatment program in close proximity to non-SNY inmates. This information will be documented on the CDCR 128-G. If determined appropriate for placement in an Exhibitionism Treatment Program, the receiving institution will conduct an ICC/IDTT to determine how best to provide for the inmate's safety while housed in the treatment program, and document such provisions on the CDCR 128-G. Inmates scheduled for transfer to the Exhibitionism Treatment Program at one of the participating institutions will not supersede the established mental health priority transfer agreement as it relates to PSU and SHU beds. The CSR will fax a copy of the endorsement chrono to the DCHCS, Health Placement Unit, at (916) 324-1795, for tracking purposes.

The Exhibitionism Treatment Program is voluntary; however, pursuant to the court order, inmates meeting the criteria for inclusion will be transferred to one of the three institutions providing this group treatment.  If a qualifying inmate refuses to enter the program; he shall be put up for transfer to one of the participating institutions. Once at the institution, mental health staff will intervene to encourage the inmate to participate. The inmate will remain at the institution until he either: (1) voluntarily enters the Exhibitionism Treatment Program; (2) has not committed a qualifying offense for a six-month period; or (3) his SHU term has been completed.[2]

In 2008 Coleman challenged his SHU confinement in an administrative proceeding within the California prison system, which denied him relief.[3]

*Second Level Decision* (*June 3, 2008*)

APPEAL DECISION: DENIED
DESCRIPTION OF PROBLEM:
It is the appellant's position that he be transferred to Atascadero State Hospital, Patton State Hospital, or a Psychiatric Services Unit (PSU). He also has several custody complaints.
ACTION REQUESTED:
The appellant states on appeal that he has been "denied adequate mental health treatment" and he requests housing in a PSU. He also states that his "mental illness suffers dearly by AdSeg placement that contributes to certain disorders and behavior".
APPEAL RESPONSE:
The appellant was interviewed at the First Level of Review by W. Von Kliest, Ph.D., his clinical case manager. She states that he is participating fully in the Correctional Clinical Case Management System (CCCMS) program and his

---

[2] Docket 1, pp. 34–38.

[3] Cal. Code Regs. tit. 15, § 3084.1(b) ("Unless otherwise stated in these regulations, all appeals are subject to a third level of review, as described in section 3084.7, before administrative remedies are deemed exhausted. All lower level reviews are subject to modification at the third level of review."). Section 3084.7 provides for three levels of review, the third level conducted by the Secretary of the California Department of Corrections and Rehabilitation, or by a designated representative. Following this procedure exhausts a prisoner's administrative remedies with respect to the issues raised therein.

mental health level of care is appropriate. This reviewer finds that appellant has been seen weekly by his case manager, most recently May 27, 2008. In addition, the appellant was seen and evaluated by a psychiatrist on May 6, 2008, for a 14 day follow-up. These clinicians found the appellant to be stable and placed at the appropriate level of care. The appellant received adequate mental health treatment within the guidelines of the CDCR.

The Appellant has been provided with a thorough response. Therefore, based on the above, his appeal is being <u>DENIED</u> at the Second Level of Review.

His custody complaints can be addressed in a separate 602.[4]

*Director's Level Appeal Decision* (*Dated October 6, 2008*)

I. APPELLANT'S ARGUMENT: It is appellant's position that the Corcoran State Prison (COR) mental health staff have denied him the right to receive adequate medical health care.

The appellant requests that he be transferred to Atascadero or Patton Hospital and moved to a Psychiatric Segregation Unit.

II. SECOND LEVEL'S DECISION: [Omitted]

III. DIRECTOR'S LEVEL DECISION:

 A. FINDINGS: Documentation and arguments presented are persuasive that the appellant has failed to support his appeal issue with sufficient evidence or facts to warrant modification of the SLR. It is not appropriate for the appellant to self diagnose his own mental health problems and then expect the mental health staff to implement appellant's recommendation for a course of medical treatment. The appellant's case factors have been evaluated by mental health staff who have determined that he has been appropriately placed in the Mental Health Services Delivery System at the CCCMS level of care. There is no indication that any evidence has been found to justify placing the appellant in an alternate level of care.

 The appellant filed the appeal as an American with Disabilities Act issue. Following careful examination, there is no evidence to support that the issue and its resolution fall within the Armstrong Remedial Plan or California Code of Regulations, Title 15, Section (CCR) 3085. As such it has been processed in accordance with CCR 3084 et sequitur. The appellant added new issues and requests to his appeal. The additional requested action is not addressed herein as it is not appropriate to expand the appeal beyond the initial problem and the initially requested

---

[4] Docket 1, p. 30.

> action (CDC Form 602, Inmate/Parolee Appeal Form, Sections A and B).
> B.    BASIS FOR THE DECISION:
> CCR 3001, 3264, 3350, 3360, 3379.
> C.    ORDER: No changes or modifications are required by the institution.[5]

The record submitted by Coleman also indicates that the following year Coleman was convicted in a disciplinary proceeding of indecent exposure and was sentenced to a 9-month term in the SHU commencing on September 26, 2009. Based upon Coleman's continued misconduct, by action dated January 26, 2010, his SHU term was made indeterminate On May 20, 2010, the Inmate Classification Committee ("ICC"), noting a pending Rule Violation Report ("RVR") dated May 13, 2010, found it appropriate to continue Coleman's placement in the SHU for an indefinite period. The Committee Action Summary also included the following:

> CLINICIAN REVIEW: S is a participant in the MHSDS at the CCCMS level of care per CDCR 128C dated 5/13/10. Based on interview with S and review of the C-File with WS Nickel, CCI:  S does have a history of suicidal ideation. S is not currently prescribed pyschotropic medication. S's Activities of Daily Living (ADL) are adequate. S's interactions with staff appear to be appropriate. S placement in alternative levels of care in the Mental Health Services Delivery System was considered and not recommended. Present and assigned as staff assistant is CCI P. Johnson.[6]

---

[5] Docket 1, p. 20.

[6] Docket 1, p. 42.

## II.   SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[7] This Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."[8]

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[9] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[10] Failure to state a claim under § 1915A incorporates the familiar standard applied in Federal Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se* prisoners are to be liberally construed, affording the prisoner the benefit of any doubt, and dismissal

---

[7] 28 U.S.C. § 1915A(a).

[8] 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); *see Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[9] Fed. R. Civ. P. 8(a)(2).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[11]

This requires the presentation of factual allegations sufficient to state a plausible claim for relief.[12] "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[13] Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[14] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[15]

## III. DISCUSSION

Reduced to its essence Coleman's complaint is that, because he has been diagnosed with a mental disorder that contributed to the behavior for which he was subjected to disciplinary action, his ad-seg placement in a SHU violates his rights. Coleman does not otherwise contest the adjudication that he violated prison regulations, only that he may not be placed in ad-seg in a SHU. Instead, Coleman appears to contend that he must be allowed to participate in mental health care at one of the other two institutions designated for treatment

---

[11] *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

[12] *Iqbal*, 556 U.S. at 678–69; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

[13] *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[14] *Id.*

[15] *Id.* (quoting *Twombly*, 550 U.S. at 555).

for "exhibitionism": Pelican Bay State Prison ("PBSP") or California State Prison, Sacramento ("CSP-Sac").

A.  *Denial of Equal Protection*

Although somewhat difficult to follow, the gist of Coleman's equal protection argument appears to be that inmates diagnosed with "exhibitionism" who have been convicted of rules violations are being discriminated against because they are being treated differently than other inmates suffering from the same disorder who have not been so convicted. More specifically, it appears that Coleman contends that, unlike other Enhanced Outpatient Program ("EOP") inmates who are excluded from placement in the SHU, he is being denied the same medical treatment that he would receive if placed in one of CDCR's Psychiatric Services Units.

In order to invoke the protection of the Equal Protection Clause Coleman must first establish that he is a member of a protected class.[16] Initially, the Court notes that sex offenders do not constitute a suspect class.[17] But more importantly, Coleman's factual allegations are incorrect. Contrary to Coleman's allegations, those diagnosed with "exhibitionism" are not necessarily compelled to receive treatment only in the SHU, nor are

---

[16] *See Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) ("To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." (citation and internal quotation marks omitted)).

[17] *See Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277–79 (9th Cir. 2004); *see also United States v. Juvenile Male*, 670 F.3d 999, 1009 (9th Cir. 2012); *United States v. LeMay*, 260 F.3d 1018, 1030 (9th Cir. 2001).

they prohibited from receiving treatment at either of the two other designated prisons: PBSP or CSP-Sac. Only those who, like Coleman, have been convicted of a rules violation are housed in the SHU at COR. Simply put, there is no authority for the proposition that prisoners convicted of violations of prison violations must be treated the same under the Equal Protection Clause as otherwise similarly situated prisoners who have not been convicted of a rules violation. Consequently, Coleman's equal protection argument fails.

B.    *Deliberate Indifference*

The Supreme Court, holding that the infliction of unnecessary suffering on prisoners violated the Eighth Amendment, stated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.[18]

The Constitution "does not necessitate comfortable prisons,"[19] nor is the Eighth Amendment a mandate for "broad prison reform" or excessive federal judicial involvement.[20]

---

[18]   *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976) (footnotes, internal quotation marks and citations omitted).

[19]   *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

[20]   *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) (*abrogated on other grounds by Sandlin v. O'Connor*, 515 U.S. 472 (1995).

However, the Eighth Amendment does not permit inhumane conditions, and prison conditions are subject to scrutiny under its provisions.[21]

The United States Supreme Court has outlined a two-part test to determine if prison officials have violated a prisoner's rights under the Eighth Amendment:

> [A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious[;] a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities . . . . The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind.[22]

With regard to the first requirement, "[t]he circumstances, nature, and duration of a deprivation of [shelter, food, clothing, sanitation, medical care, and personal safety] must be considered."[23] "The more basic the need, the shorter the time it can be withheld."[24] Deprivation of basic necessities for even brief periods can constitute a violation whereas more moderate deprivations must be more lengthy or ongoing.[25]

---

[21] *Farmer*, 511 U.S. at 832.

[22] *Farmer* 511 U.S. at 834 (citations and internal quotations omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 299–300 (1991) (discussing subjective requirement); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (discussing two-part test); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996) (same); *Wallis v. Baldwin*, 70 F.3d 1074, 1076–77 (9th Cir. 1995) (same); *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (same).

[23] *Johnson*, 217 F.3d at 731.

[24] *Hoptowit*, 682 F.2d at 1259.

[25] *Johnson*, 217 F.3d at 731–32.

As to the second requirement, the relevant state of mind is "one of 'deliberate indifference' to inmate health or safety."[26] To show deliberate indifference, the inmate must prove that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[27] "Thus, *Farmer* [ ] requires an inmate to show that the official knew of the risk *and* that the official inferred that substantial harm might result from the risk."[28] The "prison official need not have acted 'believing that harm actually would befall an inmate; it is enough that the official acted . . . despite his knowledge of a substantial risk of serious harm.'"[14] The question of the official's knowledge is a question of fact.[15]

Liberty interests affected by prison regulations are limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[16] Confinement in a SHU ordinarily does not rise to this level.[17]

---

[26] *Farmer*, 511 U.S. at 834.

[27] *Id.* at 837; *see Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (discussing objective and subjective elements of deliberate indifference claim).

[28] *Wallis*, 70 F.3d at 1077.

[14] *Id.* (quoting *Farmer*, 511 U.S. at 842) (omission in original).

[15] *Farmer*, 511 U.S. at 826.

[16] *Id.* at 484.

[17] *See Sandin*, 515 U.S. at 486 (disciplinary confinement does "not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"); (continued...)

Coleman argues that as a result of his confinement in the SHU he suffered immense mental anguish that resulted suicidal attempts for which he was admitted several times to the COR mental health crisis unit. To evidence that allegation, Coleman attached a CDCR 7230 MH Interdisciplinary Progress Notes dated October 29, 2009, showing that he had been admitted to MHCB on October 23, 2009, and was discharged and physically left the MHCB facility on October 29, 2009.[18] Nothing in that one-page document, which does nothing more than show he was treated in the MHCB facility, provides any evidentiary support for the allegation that his confinement in the SHU contributed to his treatment in the MHCB. Coleman also refers to the ICC Committee Action Summary dated May 20, 2010, that noted in the Clinician Review that Coleman had a history of suicidal ideation, but was not then currently prescribed pyschotropic medication.[19]

The deficiency in Coleman's contention is that his deliberate indifference claim is based solely upon his own "diagnosis" that his incarceration in the SHU caused him to suffer

---

[17] (...continued)
see also *May v. Baldwin,* 109 F.3d 557, 565 (9th Cir. 1997) ("[A]dministrative segregation falls within the terms of confinement ordinarily contemplated by a sentence."); *Anderson v. County of Kern,* 45 F.3d 1310, 1315 (9th Cir. 1995) ("no liberty interest in remaining in the general population" of prison).

[18] Docket 1, p. 40.

[19] Docket 1, p. 42.

severe mental anguish. This is simply insufficient as a matter of law to establish deliberate indifference.[20]

C.  *Rehabilitation Act*

"[T]o state a claim under the Rehabilitation Act, a plaintiff must allege (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance."[21]

While Coleman has adequately pleaded the first, second, and fourth elements of a Rehabilitation Act claim, he has not pleaded, nor does it appear he can truthfully plead, the third element. That is, he has not and cannot plausibly plead that he was denied the benefit of a treatment program solely by reason of his "exhibitionism." At most, Coleman has pleaded that he is entitled to participate in the treatment program in a different confinement status in a different prison, i.e., as part of the general population at PBSP or CSP-Sac. According to his treating clinician, Coleman received adequate and appropriate medical care for his medical condition. As noted above, the fact Coleman disagrees is insufficient to negate this determination.

---

[20] *See Franklin v. State of Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (noting that a disagreement between a prisoner and a medical professional over the most appropriate course of treatment cannot give rise to a viable claim of deliberate indifference).

[21] *O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (internal quoration marks and citation omitted).

E.   *Americans with Disabilities Act*

> In order to state a claim under Title II of the ADA, a plaintiff must allege:
> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'[22]

Coleman's allegations satisfy the first two elements of an ADA claim, and perhaps, at least colorably, the third. Coleman's ADA claim clearly fails to satisfy the fourth element. Coleman was not excluded from or denied the benefits or discriminated against by reason of his disability. Coleman's confinement in administrative segregation in the SHU was on account of his failure to conform his conduct to legitimate prison regulations. While the record reflects that Coleman's conduct was at least in part attributable to his disability, the current state of the law does not preclude prison officials from placing him in administrative segregation for disciplinary reasons where, as here, the prisoner continues to receive appropriate medical treatment.

IV.   **CONCLUSION/ORDER**

Based upon the foregoing, the Court concludes that, as a matter of law, confinement in administrative segregation in a Special Housing Unit of a person suffering from "exhibitionism" does not rise to a constitutional violation cognizable under the Civil Rights Act (42 U.S.C. § 1983). Nor does it violate either the Rehabilitation Act (29 U.S.C. § 794) or the

---

[22]   *O'Guinn*, 502 F.3d at 1060 (citations omitted).

Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*). Accordingly, the Complaint herein is hereby **DISMISSED** in its entirety as against all Defendants, without leave to amend.

This Court, having fully considered the matter finds that reasonable jurists could not disagree with this Court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Therefore, any appeal would be frivolous or taken in bad faith.[23] Accordingly, Coleman's *in forma pauperis* status is hereby **REVOKED**.

The Clerk of the Court is directed to enter judgment of dismissal, with prejudice, which states that the dismissal counts as a "strike" under 42 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 12th day of November, 2014.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[23] 28 U.S.C. § 1915(a)(3);  *see Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002) (revocation of *in forma pauperis* status is appropriate if the appeal is frivolous).